FILED

FEB 2 0 2018

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

BRENT ARTHUR WILSON,

Petitioner,

vs.

MICHAEL FLETCHER, ATTORNEY GENERAL OF THE STATE OF MONTANA,

Respondents.

Cause No. CV 17-145-M-DLC-JCL

FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Petitioner Brent Arthur Wilson's application for writ of habeas corpus under 28 U.S.C. § 2254. Wilson is a state prisoner proceeding pro se.

**I. 28 U.S.C. §2254 Petition**

For the reasons discussed herein, it is recommended that Wilson's petition be dismissed with prejudice as untimely.

**i. Procedural History**

Wilson challenges convictions for Felony Attempt (Theft), Deceptive Practices, and Tampering with Public Records/Information handed down in the Montana Twentieth Judicial District, Lake County following a jury trial in 2010 at

which Wilson elected to represent himself. (Doc. 1 at 2-3, 7). Wilson was ultimately sentenced to a twenty-year prison sentence, with ten of the years suspended.

Following his conviction, Wilson filed a timely direct appeal with the assistance of counsel. Wilson alleged: (1) the trial court erred by determining he knowingly and intelligently waived his right to counsel and by allowing him to represent himself at trial; (2) the State's use of journals allegedly authored by Wilson during trial warranted plain error review; and (3) the trial court imposed an illegal sentence. *State v. Wilson*, 2011 MT 277, ¶¶ 4-6, 362 Mont. 416, 264 P. 3d 1146.

The Montana Supreme Court determined the trial court undertook exhaustive discussions with Wilson about the dangers of representing himself, repeatedly attempted to appoint counsel, and considered a mental health evaluation that indicated Wilson was fit to act in his own defense. Consequently, the Court found sufficient credible evidence to support the trial court's conclusion that Wilson knowingly, intelligently, and competently waived his right to counsel. *Wilson*, at ¶¶22-24. The Court declined to conduct plain error review of the admission of the journals into evidence, *id.* at ¶¶27-29, and determined the trial court imposed a legal sentence. *Id.* at ¶¶32-36. The Court's published opinion issued on November 8, 2011. *State v. Wilson*, 2011 MT 277, 362 Mont. 416, 264

P. 3d 1146.

In July of 2017, Wilson filed a petition for a writ of habeas corpus in the Montana Supreme Court. *Wilson v. Fletcher*, OP 17-0431, Pet. (filed July 21, 2017). The Montana Supreme Court summarized Wilson's claims:

> Wilson's main complaint is that his liberty is unlawfully restrained. He states that he has "zero criminal history," questions who are the victims, and the correct amount of restitution. Citing to federal law, he contends that his underlying proceeding "draws a Federal Question with security fraud..." He lists fifty-one questions in an attachment in an effort "to determine the nature and cause of the restraint of [his] liberty..." He attaches copies of his Judgment and Commitment, Inmate Classification Action, the Board's Disposition, and his parole plan, which he labels, except for his parole plan, as "adhesion contracts." Wilson claims that his parole should have been granted, but he does not elaborate why the Board's decision is in error.

*Wilson v. Fletcher*, OP 17-0431, Or. at 2 (Mont. Aug. 8, 2017).

The Court determined relief for most of Wilson's arguments and requests did not lie in habeas because they were unrelated to the legality of his incarceration. *Id.* Further, the Court noted the claims relative to Wilson's underlying proceedings were procedurally barred because he had been adjudged guilty of an offense and appealed, thus, exhausting his remedy of appeal. *Id.*, citing Mont. Code Ann. §46-22-101(2). Additionally, the Court determined the Parole Board acted within its discretion to deny Wilson parole and that Wilson failed to establish a due process violation. *Id.* at 2-3. The Court denied Wilson's petition.

**ii. Wilson's Claims**

Wilson's federal petition consists of various supplements and exhibits alleging an array of claims. (Docs. 1, 1-1, 1-2, 6, 8, and 10). Generally, Wilson appears to dispute his citizenship and seems to believe, despite his convictions in the state court, that there is no jurisdiction under which to restrain his liberty. Wilson advances seventeen separate grounds for relief. (Doc. 1-1 at 1-10). Wilsons requests this Court order his immediate release from the Montana State Prison, award him $1,200, and order payment of his train fare to Seattle, Washington. (Doc. 1 at 7, ¶16).

**II. Federal Statute of Limitations Analysis**

Wilson filed his petition with this Court on September 20, 2017. (Doc. 1 at 8).[1] Because Wilson's petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law, it is subject to the one-year statute of limitations set forth at 28 U.S.C. §2244(d)(1).

As set forth above, Wilson filed a timely notice of appeal in state court, thus, his conviction became final by the conclusion of the time seeking such review. 28 U.S.C. § 2244(d)(1)(A). Review on direct appeal was complete on Monday, February 6, 2012, after the 90-day time period for filing a petition for writ of

[1] *See Houston v. Lack*, 487 U.S. 266, 276 (1988)(pro se prisoner's petition is deemed filed on date prisoner delivers it to prison authorities for mailing to clerk of court).

certiorari in the United States Supreme Court was concluded. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Thus, Wilson should have filed his federal petition on or before Wednesday, February 6, 2013, but Wilson filed in this Court on September 20, 2017, more than four and a half years too late. Accordingly, Wilson was directed to explain why his petition should not be dismissed as time-barred and was directed to the ways in which he could make such a showing. (Doc. 11 at 6-7). Wilson timely responded. (Doc. 12).

The statute of limitations is a threshold issue that must be resolved before the merits of individual claims. *White v. Klitzkie*, 281 F. 3d 920, 921-22 (9th Cir. 2002). Because Wilson cannot demonstrate cause to excuse his untimely filing, his petition should be dismissed.

**i. Equitable Tolling**

A habeas petitioner is " 'entitled to equitable tolling' only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010)(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "The petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" *Porter v. Ollison*, 620 F. 3d 952, 959 (9th Cir. 2010); see also, *Brambels v. Duncan*, 330 F. 3d 1197, 1202 (9th Cir. 2003).

"The threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F. 3d 1063, 1066 99th Cir. 2002). The failure to file a timely petition must be the result of external forces, not the result of the petitioner's lack of diligence. *Miles v. Prunty*, 187 F. 3d 1104, 1107 (9th Cir. 1999). "Determining whether equitable tolling is warranted is a 'fact-specific inquiry.'" *Spitsyn v. Moore*, 345 F. 3d 796, 799 (9th Cir. 2003).

Wilson seems to advance several bases for equitable tolling. Wilson explains that he was hospitalized on two separate occasions following suicide attempts that occurred in July 2014 and September 2016, respectively. (Doc. 12 at 3-7). Wilson also claims he spent 10 months at a pre-release center and was unable to file a habeas petition during that time, although Wilson does not explain when he was in the pre-release center or what prevented his federal filing. *Id.* at 3. Wilson also states he spent seven months in solitary confinement after he refused to take a TB test, *id.*, and that the remainder of the four years during which his federal filing date had passed, he was recovering from the trauma associated with the suicide attempts. *Id.*

Wilson also asserts that the law library at the Montana State Prison is poorly equipped and staffed and that he and other inmates are not allowed sufficient time to complete their work. *Id.* Wilson attaches several inmate request forms

documenting his attempts to gain adequate access to and assistance from prison the library facilities. *Id.* at 8-10.

Finally, Wilson states that he has repeatedly attempted to obtain documents from the Internal Revenue Service related to his underlying criminal case. Wilson claims the IRS agents have subjected him to tortious acts and that the ongoing ordeal demonstrates his diligence. *Id.* at 14. It also appears that Wilson has been having recent difficulty with prison officials regarding issues surrounding his legal mail. *Id.* at 15-17.

Even taking all of these events together, further inquiry reveals that Wilson is not entitled to equitable tolling. While the Court is troubled to hear of the suicide attempts that occurred in July of 2014 and September of 2016, and the resulting trauma Wilson experienced, both of these incidents occurred well after Wilson's federal filing date of February 6, 2013 had passed. Thus, they do not toll any time in Wilson's favor. Likewise, any time he spent recovering from these incidents also does not serve to excuse his failure to meet the February 2013 federal filing deadline.

Wilson does not explain when he was in pre-release or why he was unable to file in this Court during the corresponding 10 month time period. But, even assuming Wilson was entitled to equitable tolling during this ten month time period and giving him the benefit of such tolling, his petition would still be more

than three years and nine months late. The same rationale can be applied for the time Wilson alleges to have spent in solitary confinement. Again, Wilson provides no information as to when this seven-month period lapsed or why he was unable to file in this Court. But, even if the Court were to toll seven months' time in his favor, Wilson's petition would still be over three years late.

The purported denial of access to the law library/legal materials and problems Wilson has encountered with his legal mail all appear to have occurred within the last six months. Again, this does not excuse Wilson's late filing in this Court. Wilson has failed to demonstrate that an extraordinary circumstance prevented his timely federal filing. *Pace*, 544 U.S. at 418.

Finally, Wilson's claim that he has acted with the requisite diligence is also unavailing. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653. Reasonable diligence requires only "the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F. 3d 1001, 1015 (9th Cir. 2011). "To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." *Id.* at 1013. While Wilson claims he has been diligent in seeking information from the IRS,[2] this is not the

[2] It remains unclear to the Court what value documents from the Internal Revenue Service would have in evaluating

showing he needs to make. Wilson needs to demonstrate that he has been diligent in pursuing his claims and filing his petition in this Court. Wilson's failure to act diligently in pursuing his federal habeas petition precludes a grant of equitable tolling.

**ii. Actual Innocence**

The untimeliness of a petition may be excused upon a colorable showing of actual innocence. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *House v. Bell*, 547 U.S. 518, 536-37 (2006); *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). A colorable claim of actual innocence in this context does not by itself provide a basis for relief, but rather serves as a gateway through which petitioner must pass in order to have his constitutional claims considered. *McQuiggin*, 133 S. Ct. at 1928; *Schlup*, 513 U.S. at 315. The gateway showing requires petitioner to demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 537 (*quoting Schlup*, 513 U.S. at 327). Ultimately, the question is whether petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316;

---

the constitutionality of Wilson's underlying conviction. A federal court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

*House*, 547 U.S. at 537.

To be credible, a colorable claim of actual innocence requires petitioner to support his allegations of constitutional error with "new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial." *Schlup*, 513 U.S. at 327-28; *House*, 547 U.S. at 538.

But, Wilson cannot not make the requisite showing. He asserts that if the Respondents are made to answer the 51 questions he advances in his petition, the responses will demonstrate that Wilson is innocent of any criminal offense. (Doc. 12 at 2, 14). As an initial matter, the questions Wilson puts forth in his petition do not constitute "newly discovered evidence." What is more, the burden is on Wilson to make a showing of actual innocence. He cannot do so at this juncture by speculating as to what response the Respondents may or may not give to his petition.

Presumably, Wilson believes the Court may decide the constitutional issues he attempts to raise first and then sort out how to deal with Wilson's untimely filing. But courts generally do not pronounce on constitutional questions unless it is necessary to do so. Even in the realm of federal habeas, the doctrine of constitutional avoidance is generally followed to the extent of first ascertaining a petitioner meets the prerequisites for habeas relief and only deciding the

constitutional question if a decision doing so will not amount to an advisory opinion. *See, e.g., Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (stating that procedural issues should "ordinarily" be decided first). Because Wilson's petition is untimely and the untimeliness cannot be excused by a colorable showing of actual innocence, he has not met the procedural threshold for having this Court determine the merits of his claims.

## III. Conclusion

Wilson's claims are untimely and his failure to comply with the federal limitations period cannot be excused. His petition should be dismissed as time-barred.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also

decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of the claims advanced by Wilson appear to make a substantial showing that he was deprived of a constitutional right. A certificate of appealability should be denied because the petition is time-barred by over four years and no reasonable jurist would find his claims timely. Thus, there is no basis to encourage further proceedings.

Based on the foregoing, the Court makes the following:

## RECOMMENDATION

1. The Petition (Doc. 1) should be DISMISSED WITH PREJUDICE as untimely.

2. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondents and against Petitioner.

3. A certificate of Appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Wilson may object to this Findings and Recommendation within 14 days.[3]

[3] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Wilson is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Wilson must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 20th day of February, 2018.

*/s/ Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge